UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

WILMARIO DEVONDRIC TRUEBLOOD,
     Petitioner,

v.                                           Case No. 4:20cv560/MW/EMT

MARK S. INCH,
     Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Wilmario Devondric Trueblood (Trueblood) filed a pro se petition for writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 1) and an accompanying memorandum of law (ECF No. 2). Respondent (the State) filed a response (ECF No. 11) and relevant portions of the state court record (ECF No. 11-1 through 11-19). Trueblood filed a reply (ECF No. 15).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B)–(C) and Fed. R. Civ. P. 72(b). After careful consideration of the issues presented by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the

disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is also

the opinion of the undersigned that Trueblood is not entitled to federal habeas relief.

## I.      RELEVANT BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are contained

in the state court record (ECF No. 11-1, *et seq*.).[1]  Trueblood challenges the

judgments and life sentences entered in the Circuit Court for Leon County, Florida,

after revocation of his probation in thirty-seven cases involving burglaries of

unoccupied dwellings—thirty-two of which also included grand thefts—that

occurred in 2010.[2]  An amended violation of probation report was filed, along with

an addendum, dated March 22, 2013, alleging that Trueblood violated Condition 5

of his probation, which required that he live and remain at liberty without violating

---

[1] References to the state court record are to the exhibits submitted by the State with its response
(ECF Nos. 11-1 through 11-19).  Because the record is not consistent in providing Bates stamp
page numbers, reference to the record will be to the CM/ECF docket numbers and pertinent page
numbers.

[2] Circuit Court case numbers 10CF3635A; 10CF3636A; 10CF3637A; 10CF3640A; 10CF3645A;
10CF3649A;  10CF3650A;  10CF3652A;  10CF3654A;  10CF3657A;  10CF3658A;10CF3659A;
10CF3660A;  10CF3662A;  10CF3991A;  10CF3993A;  10CF3994A;  10CF3996A;  10CF3997A;
10CF3998A;  10CF4001A;  l0CF4003A;  l0CF4004A;  10CF4005A;  10CF4007A;  10CF4010A;
10CF4011A;  10CF4014A;  10CF4019A;  10CF4021A;  10CF4023A;  10CF4025A;  10CF4029A;
10CF4031A;  10CF4033A;  10CF4039A;  and 10CF4040A (ECF No. 11-3 at 56–137).

the law, and Condition 6, which required that he not associate with persons engaged in criminal activity (ECF No. 11-1 at 131–32).

Prior to the hearing on the alleged violation of probation (VOP), Trueblood's conflict counsel on *new* burglary charges and on the VOP charges filed a motion on June 13, 2013, to incur costs for a second psychiatric evaluation (ECF No. 11-1 at 110–12).  The motion was denied at a June 19, 2013, hearing (*see id.* at 14).   On July 3, 2015, counsel filed a second motion for a second competency evaluation (*id.* at 149–52), stating that counsel had received a copy of the first competency evaluation performed on April 23, 2013, in which Michael D'Errico, Ph.D., found Trueblood competent to proceed, but counsel nevertheless had concerns over Trueblood's competency (*id.*).  After a hearing held July 12, 2013, the motion for a second competency evaluation was denied (*see id.* at 254–57).

Additionally, Trueblood's motion to suppress statements and physical evidence obtained pursuant to a *Terry* stop in 2013 (ECF No. 11-1 at 159) was denied after a hearing (*id.* at 204, 274–356). [3]  On October 3, 2013, an evidentiary hearing

---

[3] The motion was based in part on *Terry v. Ohio*, 392 U.S. 1 (1968) (holding that officers may stop and temporarily detain a person when they have a "reasonable suspicion" that criminal activity has or will occur).  Although the motion to suppress listed the case numbers for the 2010 VOP cases as well as the new 2013 burglary cases, counsel clarified that her arguments against the GPS records—the subject of the motion to suppress—applied only to their use in prosecuting the new charges (*see* ECF No. 11-1 at 351).

was held on the amended VOP report (ECF No. 11-1 at 367 to ECF No. 11-2 at 154). The prosecutor presented testimony from six burglary victims indicating that each of their residences had been burglarized and an item or items taken without their permission.  Trueblood's probation officer testified that she provided detectives with Trueblood's locations, as recorded by the GPS monitoring system required by the conditions of his probation (ECF No. 11-2 at 21–23).  Documents indicating his GPS locations, accurate within eighteen feet of the locations and dates of the incidents, were admitted (*id*. at 24–25) and showed that on the dates in question Trueblood was at or near the residences that were the subject of burglaries (*id*. at 27).

The prosecutor also presented evidence that Trueblood was stopped not far from one of the new burglaries and items taken in that burglary were found in his possession (ECF No. 11-1 at 371–72).[4]  Tallahassee Police Investigator Michael Goldwich testified to five specific burglaries by address and case number that Trueblood confessed to in his interviews (ECF No. 11-2 at 109–112).  A chart of fifty burglaries in 2012 and 2013, listing case number, address, date, time of offense, victim, and time Trueblood was present based on GPS monitoring records, was

---

[4] Without objection, the court took judicial notice of testimony the arresting officers previously provided at the August 19, 2013, motion to suppress hearing in the cases arising from the new law violations (*see* ECF No. 11-1 at 274–314).

admitted (*id*. at 82–92, 398–99).  Leon County Sheriff's Detective Jennifer Morris testified that in her interview of Trueblood on April 15, 2013, he confessed to nine different burglaries, which she identified by address and case number (*id*. at 41–57).  Transcripts of Trueblood's statements to officers were admitted, having first been submitted in a motion to suppress hearing (*id*. at 60, 156–366).

As to Condition 6, evidence was presented that Trueblood confessed to committing burglaries with other persons.  The evidence also included two letters to Tallahassee Police Investigator Michael Goldwich in which Trueblood confessed to participating in burglaries and identified the confederates involved with him in the burglaries (*see* ECF No. 11-2 at 91, 114, 375–97).

At the conclusion of the revocation hearing, the circuit court found that the State met its burden that Trueblood willfully and substantially violated his probation by committing new law violations in fifty-six burglaries and four grand thefts, thus proving violation of probation Condition 5 (ECF No. 11-2 at 123).  The court also found the State proved one violation of Condition 6, that Trueblood associated with persons engaged in criminal activity (*id.*)  Based on proof of violation of two conditions of probation, and after review of the sentencing scoresheet, the court revoked Trueblood's probation in each of the original thirty-seven cases and

sentenced Trueblood to concurrent terms of life in prison in those cases (*id*. at 144–51).[5]

Direct appeal was taken to the Florida First District Court of Appeal (First DCA) in Case No. 1D13-4944. During the appeal, and pursuant to Florida Rule of Criminal Procedure 3.800, Trueblood filed a motion to correct sentencing error challenging the sentencing scoresheet (ECF No. 11-3 at 4). The First DCA returned jurisdiction to the circuit court where the state court approved a corrected scoresheet, which did not affect the overall sentence. On January 22, 2015, the circuit court announced corrected sentences by each count, rather than just the case number, resentencing Trueblood to life in prison on each count to be served concurrently (*id*. at 56–134). The appeal proceeded, and Trueblood's counsel filed an *Anders* brief noting no good faith grounds for appeal (ECF No. 11-4).[6] Trueblood was given leave to file a pro se brief but did not do so. The First DCA affirmed the judgments and sentences per curiam without discussion on November 16, 2015, and a mandate

---

[5] Trueblood was tried, convicted, and sentenced in two of the new burglary and grand theft cases, which are not the subject of this petition, but which are the subject of his separate petition pending in this court, *Trueblood v. Inch*, 4:21cv19/MW/EMT. The issues raised there are independent of the issues raised in this case.

[6] *Anders v. California*, 386 U.S. 738 (1967).

subsequently issued (ECF No. 11-6).  *See Trueblood v. State*, 178 So. 3d 404 (Fla. 1st DCA 2015) (Table).

On May 31, 2016, Trueblood filed a pro se Petition for Writ of Habeas Corpus in the First DCA pursuant to Florida Rule of Appellate Procedure 9.141(d) alleging ineffective assistance of appellate counsel (ECF No. 11-7).  Trueblood argued that appellate counsel rendered ineffective assistance by failing to argue that the trial court erred by not conducting a competency hearing required by state rules of procedure (*id*. at 10).  The First DCA denied the petition on the merits on September 7, 2016 (ECF No. 11-8).  *See Trueblood v. State*, 201 So. 3d 189 (Fla. 1st DCA 2016).  Trueblood's motion for rehearing (ECF No. 11-9 at 2) was denied on October 13, 2016 (*id*. at 6).

On March 6, 2017, Trueblood filed a pro se motion for postconviction relief in the state circuit court pursuant to Florida Rule of Criminal Procedure 3.850 (ECF No. 11-10 at 6).  He raised five claims: (1) fundamental error and prosecutorial misconduct in using the GPS tracking system as proof of new law violations in his violation of probation hearing; (2) ineffective assistance of counsel in failing to move for a second evaluation and competency hearing prior to the violation of probation hearing; (3) ineffective assistance of counsel for failing to adequately prepare, investigate, or move for a continuance of the violation of probation hearing;

(4) newly discovered evidence that all but two of the new law violation charges were later dismissed; and (5) cumulative error (*id*.).

An evidentiary hearing was held on the postconviction motion on December 22, 2017 (ECF No. 11-10 at 305–75). The state court denied the claims, stating its findings and reasoning on the record (*id*. at 371–74). A written order denying postconviction relief for the reasons stated on the record was entered on that same date (*id*. at 285).

Trueblood appealed to the First DCA in Case No. 1D18-213, and filed a pro se brief challenging the denial of grounds One and Two (ECF No. 11-13). The state filed an answer brief (ECF No. 11-14) to which Trueblood filed a reply brief (ECF No. 11-15). The First DCA affirmed without explanation in *Trueblood v. State*, 301 So. 3d 905 (Fla. 1st DCA 2020) (ECF No. 11-16). Rehearing was denied on September 10, 2020 (Ex. 11-17 at 7), and the mandate issued October 1, 2020 (ECF No. 11-16 at 2).

On September 24, 2020, Trueblood filed a petition for writ of habeas corpus in the Florida Supreme Court alleging manifest injustice (ECF No. 11-18). The petition was dismissed on October 19, 2020, as unauthorized (ECF No. 11-19). *See Trueblood v. Inch*, SC20-1432, 2020 WL 6130894 (Fla. 2020) (unpublished). (ECF No. 11-19).

On November 30, 2020, by the mailbox rule, Trueblood filed the instant pro

se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1).

## II.   STANDARD OF REVIEW

A federal court "shall not" grant a habeas corpus petition on any claim that

was adjudicated on the merits in state court unless the state court's decision "was

contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1).  The United

States Supreme Court explained the framework for § 2254 review in *Williams v.*

*Taylor*, 529 U.S. 362 (2000).[7]  Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the
> writ if the state court arrives at a conclusion opposite to that reached by
> this court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable
> facts.  Under the "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but unreasonably
> applies that principle to the facts of the prisoner's case.

*Id.* at 412–13 (O'Connor, J., concurring).

---

[7] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice
Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in
parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the
Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia)
in part II (529 U.S. at 403–13). The opinion of Justice Stevens in part II was joined by Justices
Souter, Ginsburg, and Breyer.

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003).  After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases.  *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court.  *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004).  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding"). "The question under AEDPA [the Antiterrorism and Effective Death Penalty Act of 1996] is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' " *Landrigan*, 550 U.S. at 473–74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under

§ 2254(d) is "difficult to meet . . . because it was meant to be." *Richter*, 562 U.S. at

102.  The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete
> bar on federal-court relitigation of claims already rejected in state
> proceedings.  *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333,
> 135 L. Ed. 2d 827 (1996) (discussing AEDPA's "modified res judicata
> rule" under § 2244).  It preserves authority to issue the writ in cases
> where there is no possibility fairminded jurists could disagree that the
> state court's decision conflicts with this Court's precedents.  It goes no
> further.  Section 2254(d) reflects the view that habeas corpus is a "guard
> against extreme malfunctions in the state criminal justice systems," not
> a substitute for ordinary error correction through appeal.  *Jackson v.
> Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560
> (1979) (Stevens, J., concurring in judgment).  As a condition for
> obtaining habeas corpus from a federal court, a state prisoner must
> show that the state court's ruling on the claim being presented in federal
> court was so lacking in justification that there was an error well
> understood and comprehended in existing law beyond any possibility
> for fairminded disagreement.

*Richter*, 562 U.S. at 102–03 (emphasis added).

To be entitled to habeas relief, the petitioner must show that he is in custody

"in violation of the Constitution or laws and treaties of the United States," *see* 28

U.S.C. § 2254(a), and that the constitutional error resulted in "actual prejudice,"

meaning, the error "had a substantial and injurious effect or influence" in

determining the outcome.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal

quotation marks and citation omitted).

## III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner exhaust available state court remedies, *see* 28 U.S.C. § 2254(b)(1), thereby giving the State the " 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citation omitted)). The petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, 513 U.S. at 365–66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard*, 404 U.S. at 277–78.

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted—that is, procedurally barred from federal review. *See Bailey v. Nagle*, 172 F.3d 1299, 1302–03 (11th Cir. 1999). The court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See Coleman v. Thompson*, 501 U.S. 722, 734–35 & n.1 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be

enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303. In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar. *Id.*

A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question. *See Harris v. Reed*, 489 U.S. 255 (1989). The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim. *Id.* Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. *Id.* Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and

regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

The adequacy of a state procedural bar to the assertion of a federal question is itself

a federal question.  *Lee v. Kemna*, 534 U.S. 362 (2002).  The federal court "lacks

jurisdiction to entertain a federal claim on review of a state court judgment, if that

judgment rests on a state law ground that is both independent of the merits of the

federal claim and an adequate basis for the court's decision."  *Foster v. Chatman*,

136 S. Ct. 1737, 1745 (2016) (internal quotation marks and citation omitted).

To overcome a procedural default, the petitioner must show cause for the

default and prejudice resulting therefrom, or that the federal court's failure to reach

the merits of the claim would result in a fundamental miscarriage of justice.  *Tower*,

7 F.3d at 210; *Parker*, 876 F.2d 1470.  "For cause to exist, an external impediment,

whether it be governmental interference or the reasonable unavailability of the

factual basis for the claim, must have prevented petitioner from raising the claim."

*McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (quoting *Murray v. Carrier*, 477 U.S.

478, 488 (1986)).  To satisfy the miscarriage of justice exception, the petitioner must

show that "a constitutional violation has probably resulted in the conviction of one

who is actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  "To establish

the requisite probability, the petitioner must show that it is more likely than not that

no reasonable juror would have convicted him."  *Schlup*, 513 U.S. at 327.  Further:

[A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

## IV.   TRUEBLOOD'S CLAIMS

**A.    Ground One: Fundamental error occurred when the state attached a GPS tracking device to Petitioner's person in the guise of a condition of probation which was solely for the purpose of investigating and discovering evidence of new crimes to be used in later prosecutions. The prosecutor committed perjury and fraud on the court resulting in manifest injustice by not explaining to him or the court the true reason for the GPS tracking device at the time Trueblood was placed on probation.**

Trueblood raised this claim in his Rule 3.850 motion filed in state court, and alleged that the prosecutor did not inform him or the court of the reason for the GPS tracking device at the time of imposition of probation. He also alleged that the prosecutor perjured himself at the VOP hearing when he told the court that he had warned Trueblood that if he continued to run a burglary operation, law enforcement would catch him quickly and would show no mercy on a VOP (ECF No. 11-10 at 10). Trueblood argued that the prosecutor's actions amounted to malicious and vindictive prosecution in violation of his rights of due process (*id.*).

### 1.    Clearly Established Federal Law

Prosecutorial misconduct can be a basis for habeas relief if such conduct "so infected the [proceeding] with unfairness as to make the resulting conviction a denial of due process." *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (alteration added). "Where prosecutorial misconduct renders a trial fundamentally unfair, it constitutes a denial of due process," but "[i]f it fails to render the trial fundamentally unfair, however, habeas relief is not available." *Muhammad v. McNeil*, 352 F. App'x 371, 375 (11th Cir. 2009) (unpublished) (citing *Land v. Allen,* 573 F.3d 1211, 1219 (11th Cir. 2009) (per curiam) (citing *Darden,* 477 U.S. at 181)).

As to the reasonableness of the GPS monitoring requirement and its use, "a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." *Samson v. California*, 547 U.S. 843, 853 (2006) (citing *Griffin v. Wisconsin*, 483 U.S. 868, 879 (1987)). Governmental interests are heightened in this context because probationers are "more likely than the ordinary citizen to violate the law" and have "even more incentive to conceal their criminal activity and quickly dispose of incriminating evidence." *United States v. Knights*, 534 U.S. 112, 120 (2001). "Just as other punishments for criminal convictions curtail an offender's freedoms, a court

granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." *Id.* at 119.

### 2.    Federal Review of State Court Decision

Trueblood contends his Fourth Amendment and due process rights were violated when he was required to wear a GPS tracking device as a condition of probation without being told by the prosecutor that the information generated from the device could be used to show his participation in future crimes.  He also contends his VOP hearing was fundamentally unfair because, in argument to the court, the prosecutor stated that he had made clear to Trueblood at the time of his plea and placement on probation that the GPS device would allow law enforcement to detect new law violations.   Trueblood points out that the transcript of the plea and sentencing hearing does not show the prosecutor making those comments.

An evidentiary hearing was provided on this claim.  At the hearing, Trueblood testified that he read the plea form when he entered his plea to the original burglary and theft cases but denied knowing he could face prison if he violated his probation and denied knowing that a custodial sentence of only one year and one day was a light sentence on thirty-seven cases.  He testified he did not really commit the underlying crimes to which he pled no contest because, although he was on the scene of the burglaries, he was just "helping out" and did not participate.  He testified that

before the plea deal was accepted, the prosecutor never spoke to him or his counsel about the fact that the deal was his "last chance."  When asked to explain what was wrong with having been required to wear the GPS monitor, Trueblood could not state any reasons, but simply indicated he felt the prosecutor was improperly "betting against him" by requiring it (ECF No. 11-10 at 312–13, 367).

The prosecutor testified at the evidentiary hearing that he spoke to Trueblood in front of the judge about the fact that the probationary conditions were setting him up to make sure he did not continue committing crimes (ECF No. 11-10 at 336).  He explained that both he and defense counsel talked to Trueblood and made sure he understood—although "the transcripts will certainly reflect better"—that the plea deal was being made with the understanding that if he continues to be this kind of burglar, "we will catch him quickly" (*id*. at 337).  The prosecutor further testified about the reasons why the lenient plea offer was made; he characterized it as a "gift" with the understanding that if Trueblood continued the criminal behavior, he would be caught quickly (*id*.).  The prosecutor said it was the intent of all the parties involved that Trueblood be fitted with a GPS monitor and, without that condition, the prosecutor would not have agreed to the deal (*id*. at 341, 349).  He denied imposing the condition to set up Trueblood to fail and said, "I was setting him up to

succeed or fail.  I was just setting him up so that I would know the difference.  Once

again, the purpose of prosecution is to stop criminal behavior." (*id*. at 342).

The postconviction court denied the claim, stating on the record:

> Ground One, there's nothing improper about utilizing a GPS as
> part of probation to insure [sic] that the defendant, the person on
> probation continued to comply with the law.  As I said, GPS serves as
> both a witness for or against a defendant.  It's a wise decision to use
> GPS because it will insure that if there is a problem, there's evidence
> to either support or undermine the proof there.
>
> It was agreed to as part of the plea that was entered into in his
> original cases.  And there's just no basis for showing that there was
> some sort of manifest injustice here or anything like that.

(ECF No. 11-10 at 372).  Trueblood, proceeding pro se, appealed denial of the claim

to the First DCA, arguing there that the circuit court failed to fully address the claim

and that a GPS requirement is not intended to be used to provide evidence of future

crimes, citing Florida Department of Corrections policies and section 948.11(3),

Florida Statutes (ECF No. 11-13 at 16–18).

The First DCA affirmed denial of relief without issuing an explanatory

opinion.  *See Trueblood v. State*, 301 So. 3d 905 (Fla. 1st DCA 2020).  "[T]he

summary nature of a state court's decision does not lessen the deference that it is

due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002); *see also Richter*, 562

U.S. at 99 ("When a federal claim has been presented to a state court and the state

court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state law procedural principles to the contrary."). Where a state court denies relief without providing an explanation or its reasoning, the habeas petitioner must show that there was no reasonable basis for the state court's decision. *See Richter*, 562 U.S. at 98. The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask "whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court." *Id.* at 102. Where there is a related state court decision that does provide a relevant rationale, the federal court should "look through" the unexplained decision to the last related state court decision. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). It should be presumed that the unexplained decision adopted the same reasoning. *Id.*

At the original plea and sentencing hearing in the thirty-seven burglary and thirty-two grand theft cases, the court advised Trueblood that if he were to violate probation, he could be brought back to court and sentenced to the maximum penalty on each of the cases. Trueblood confirmed that he understood (ECF No. 11-11 at 30). The court announced that a special condition of probation was the electronic GPS monitor, which condition was also stated in the plea agreement that Trueblood

signed (*id.* at 32, 56–57).  The prosecutor did not state anything on the record at that time concerning future use of the GPS or the reason for the requirement.

Trueblood has provided no United States Supreme Court precedent supporting his claim that it is a violation of the Fourth Amendment or his due process rights to require a probationer to wear a GPS monitor.  He also failed to provide any Supreme Court precedent holding that it is a violation of a constitutional right to use that GPS location information in prosecuting a violation of probation.  Moreover, the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a released prisoner whose conditions of release provide for suspicionless searches. *Samson,* 547 U.S. 847.  Relying upon this premise, courts have upheld the use of GPS monitoring as a condition of supervised release.  *See, e.g., United States v. Ringgenberg,* 494 F. App'x 685, 685 (8th Cir. 2012) (unpublished); *United States v. Watson,* 204 F. App'x 309, 310 (4th Cir. 2006) (unpublished).

As noted *supra*, "a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." *Samson*, 547 U.S. at 853.  The Supreme Court explained in *United States v. Knights*:

> The State has a dual concern with a probationer. On the one hand is the hope that he will successfully complete probation and be integrated back into the community. On the other is the concern, quite justified, that he will be more likely to engage in criminal conduct than an ordinary member of the community. The view of the Court of Appeals in this case would require the State to shut its eyes to the latter concern and concentrate only on the former. But we hold that the Fourth Amendment does not put the State to such a choice. Its interest in apprehending violators of the criminal law, thereby protecting potential victims of criminal enterprise, may therefore justifiably focus on probationers in a way that it does not on the ordinary citizen.

534 U.S. 112, 120–21 (2001). Governmental interests are heightened in this context because probationers are "more likely than the ordinary citizen to violate the law" and have "even more incentive to conceal their criminal activity and quickly dispose of incriminating evidence." *Id.* at 120. Thus, restrictions may be imposed on a probationer for legitimate probationary purposes, including deterring the probationer from engaging in criminal activity and detecting that activity if it occurs. *See id.* at 120–21. As a probationer with a history of convictions for multiple burglaries, Trueblood's GPS monitoring requirement has not been shown to be unreasonable or a violation of his Fourth Amendment or due process rights.

Trueblood was on notice when he entered his plea that the GPS monitoring was a condition of probation, and he agreed to the terms and conditions of his probation at the time. He denies knowing the purpose of the GPS monitoring, but the claim is disingenuous—what other purpose would GPS monitoring serve but to

document the probationer's location to ensure compliance with the conditions of probation, including the condition that he not violate the law. In any event, a lack of knowledge as to the purpose of GPS monitoring does not equate to "fundamental error" or establish prosecutorial misconduct. Likewise, whether the prosecutor was incorrect in recalling at the VOP hearing that Trueblood was warned when he entered his plea that the GPS information could be used to "catch him quickly" should he commit a new law violation, had no bearing on the evidence of new law violations supporting the revocation of his probation. No such warning was required in order to allow imposition of the GPS monitor or use of the evidence it generated—and any lack of such warning is irrelevant to the decision as to whether the evidence as a whole showed new law violations—evidence which includes Trueblood's many confessions to new burglaries.

Trueblood has not identified any United States Supreme Court decision holding that a probationer has a privacy interest in GPS location data. Instead, he argues that state law does not intend for GPS evidence to be used to prove a violation of probation, citing a provision of the Florida Administrative Code and a Florida statute.[8] However, claims of violation of state law are not cognizable in federal

---

[8] Section 948.11(3), Fla. Stat., cited by Trueblood in his memorandum (ECF No. 2 at 3), provides that any noncompliance with the terms and conditions of sentence shown by GPS monitoring shall

habeas review. *See, e.g.*, *Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir. 2000) (citing *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988)).

Even if, as Trueblood argues, he should have been advised at his plea colloquy of all the ramifications of wearing a GPS monitor, he has failed to demonstrate that the alleged error was substantial or injurious. For federal habeas relief, Trueblood must show that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). He must also show that the constitutional error resulted in "actual prejudice," meaning the error "had a substantial and injurious effect or influence in determining the jury's verdict" or, in this case, the outcome of the violation of probation hearing. *Brecht*, 507 U.S. at 637. He cannot make that showing in this case. The evidence of his violations of probation was ample, including multiple confessions to burglaries and theft, and his possession of items of stolen property near one of the new burglaries. He has not explained how the conduct or the outcome of the VOP proceedings would have been different if he had been advised prior to his plea and acceptance of the terms of his probation that the GPS information could be used as proof of a violation of probation.

---

be investigated by the probation officer. The statute does not limit use of the information or prohibit the probation officer or the GPS vendor from disseminating GPS location information to law enforcement.

Trueblood has failed in this claim to demonstrate that the adjudication by the state court was contrary to or an unreasonable application of any federal law as determined by the Supreme Court or an unreasonable determination of the facts. Further, he has failed to demonstrate that the alleged error caused "actual prejudice," that is, a substantial and injurious effect or influence on the outcome of his VOP proceeding.  He is not entitled to federal habeas relief on this claim.

**B.    Ground Two: The trial court committed fundamental error resulting in manifest injustice when it repeatedly denied the Petitioner a second evaluation for mental competency.**

The claim raised in Trueblood's Rule 3.850 motion in the trial court alleged that defense counsel provided ineffective assistance by failing to move for a competency hearing (ECF No. 11-10 at 14–17).  On appeal, Trueblood argued that the circuit court erred in denying his claim of ineffective assistance of counsel for failing to move for a competency hearing, but also included brief arguments suggesting the trial court had a duty to order a second evaluation and to hold a hearing (ECF No. 11-13 at 3, 25–30).  The First DCA affirmed without explanation. *Trueblood v. State*, 301 So. 3d 905 (Fla. 1st DCA 2020).

Trueblood now argues in Ground Two of the instant petition that the trial court committed fundamental error resulting in manifest injustice when it repeatedly denied him a second evaluation for mental health competency (ECF No. 1 at 7).

However, in his memorandum accompanying his petition, he states the issue in Ground Two as ineffective assistance of trial counsel "for failing to move for a competency hearing" and that "the trial court erred in denying Ground Two of Petitioner's 3.850 motion that counsel was ineffective for failing to move for a competency hearing after ordering an evaluation in simultaneously progressing cases . . . ."  He also argues trial court error in not ordering a second competency evaluation and not holding a hearing (ECF No. 2 at 4, 5–6).  In his reply to the State's response, however, Trueblood explains that the reference to ineffective assistance of counsel in regard to the competency issue was included in error in his memorandum of law (ECF No. 15 at 2).  He explains that the issue he presents in his petition is fundamental error and deprivation of due process by the trial court in failing to provide a second competency evaluation and failure to hold a hearing on the competency issue (*id*. at 6).

### 1.    Exhaustion

Trueblood's due process claim alleging trial court error in failing to order a second evaluation and competency hearing was not raised or heard on the merits in the state circuit court.  In his reply in this Court, Trueblood argues that he exhausted the claim by filing a petition for writ of habeas corpus in the Florida Supreme Court in Case No. SC20-109 (*see* Ex. to Reply, ECF No. 15 at 11).  However, that petition

pertains to two 2013 criminal cases—Nos. 2013CF915 and 2013CF916—and is unrelated to the convictions and sentences for which Trueblood seeks federal habeas relief in this proceeding.  The Florida Supreme Court transferred the petition in No. SC20-109 to the circuit court to be considered as a motion for postconviction relief under Rule 3.850 in the two unrelated cases (ECF No. 15 at 26).[9]

Trueblood filed another petition for writ of habeas corpus in the Florida Supreme Court in Case No. SC20-1482 on September 29, 2020, referencing the VOP cases at issue here (ECF No. 11-18 at 2).  In that petition, he argued that manifest injustice occurred when the circuit court denied him a second evaluation for mental health competency after having ordered a first evaluation and in not holding a competency hearing (*id*. at 16–22).  The Florida Supreme Court dismissed the petition as unauthorized pursuant to *Baker v. State*, 878 So. 2d 1236 (Fla. 2004) (holding that for non-capital defendants, with limited exceptions, habeas corpus relief is not available in Florida to obtain the kind of collateral relief which is available by motion under Rule 3.850) (*see* ECF No. 11-19).

---

[9]  The circuit court found the claim untimely and further stated in regard to the two 2013 criminal cases—Nos. 2013CF915 and 2013CF916—that the First DCA had remanded for a *nunc pro tunc* competency hearing and "the competency issues were already addressed on remand and the resolution was affirmed on appeal ([DCA] case nos. 1D17-4307; 4308)" (ECF No. 15 at 32).

The state supreme court's ruling—that Trueblood's claim was not properly raised in a habeas petition—constitutes an independent and adequate state law ground that bars the procedural due process competency claim from federal habeas review. The Florida Supreme Court stated it was relying on state procedural rules to dismiss the federal claim without ruling on the merits. Further, the state court's decision on the procedural issue rested entirely on state law grounds and was not intertwined with an interpretation of federal law. The rule in Florida that a non-capital prisoner may not use a state habeas petition to collaterally attack his conviction, and instead must use Rule 3.850, is firmly established and consistently followed by the Florida courts. *See Baker*, 878 So. 2d at 1245–46.

Also firmly established and regularly followed is the rule that successive Rule 3.850 motions are generally prohibited when the grounds alleged therein were known or could have been known at the time of the first Rule 3.850 motion. *See Baker,* 878 So. 2d at 1243–44; Fla. R. Crim. P. 3.850(h); *Christopher v. State,* 489 So. 2d 22, 24 (Fla. 1986); *Frazier v. State,* 898 So. 2d 1183, 1183–84 (Fla. 3d DCA 2005) (barring as successive claims that could have and should have been made in previous post-conviction motion); *Washington v. State,* 876 So. 2d 1233, 1234 (Fla. 5th DCA 2004) (same). For these reasons, Trueblood cannot now return to state

court to obtain a ruling on his procedural due process claim, which could have been raised in his initial Rule 3.850 motion.

Notwithstanding Trueblood's failure to exhaust the procedural due process claim that his due process rights were violated by the circuit court's failure to order a second competency evaluation and hold a hearing, the claim may be denied on the merits, as provided by 28 U.S.C. § 2254(b)(2), and can so be denied here, as will be discussed *infra*.

To the extent Trueblood makes a substantive claim that he was tried on the VOP charges while incompetent, Eleventh Circuit precedent dictates that the substantive claim is not subject to the exhaustion requirements of § 2254. *Lawrence v. Sec'y, Fla. Dep't of Corr.*, 700 F.3d 464, 481 (11th Cir. 2012). The substantive claim will be reviewed without any § 2254 deference where there is no state court decision on the merits to which the court may defer. *Id.*

### 2.    Merits

The Due Process Clause of the Fourteenth Amendment prohibits states from trying or convicting a defendant who is mentally incompetent. *See*, *e.g.*, *Drope v. Missouri*, 420 U.S. 162, 171, 172 (1975); *Pate v. Robinson*, 383 U.S. 375, 378 (1966). The Supreme Court set the standard to be used in determining mental competency as whether a defendant "has sufficient present ability to consult with his

lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam); *Drope*, 420 U.S. at 171; *see also Indiana v. Edwards*, 554 U.S. 164, 170 (2008). Florida courts follow this standard. *See, e.g.*, *Hernandez-Alberto v. State*, 126 So. 3d 193, 209 (Fla. 2013) (citing *Dusky*, 362 U.S. at 402; *Drope*, 420 U.S. at 171).

To prove a substantive claim that the defendant was tried while incompetent, the prisoner must present clear and convincing evidence as to his incompetence. *Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995). In bringing a substantive incompetency claim in a § 2254 petition, the petitioner "is entitled to no presumption of incompetency and must demonstrate his . . . incompetency by a preponderance of the evidence." *Lawrence*, 700 F.3d at 481 (citation omitted). A petitioner who presents "clear and convincing evidence" creating a "real, substantial and legitimate doubt" as to his competence to stand trial is entitled to a hearing on his substantive incompetency claim. *James v. Singletary*, 957 F.2d 1562, 1573 (11th Cir. 1992) (quoting *Fallada v. Dugger,* 819 F.2d 1564, 1568 n.1 (11th Cir. 1987)).

As to a claim of violation of procedural due process, the Supreme Court in *Pate v. Robinson* held that failure of the court to hold a hearing on competency in the face of evidence that raises a bona fide doubt as to competence deprives the

defendant of his right to a fair trial. 383 U.S. at 385. "A petitioner presenting a claim under *Pate* must first establish that the trial court should sua sponte have held a competency hearing." *James*, 957 F.2d at 1571. A *Pate* analysis of procedural error in failing to hold a competency hearing "must focus on what the trial court did in light of what it then knew, whether objective facts known to the trial court were sufficient to raise a bona fide doubt as to the defendant's competency." *Fallada*, 819 F.2d at 1568 (citations omitted).

The main thrust of Trueblood's claim in this proceeding is that the trial court in his VOP cases fundamentally erred in failing to order a second competency evaluation after Trueblood was previously determined to be competent by Dr. Michael D'Errico in an earlier evaluation. The factual background concerning his motion for a second evaluation is muddled to some extent because the motion was made in regard to both his 2010 VOP cases and his new 2013 burglary cases (ECF No. 11-1 at 139). The record does not clearly reflect that in an appeal from the conviction and sentences in the two 2013 burglary cases that went to trial, that the First DCA remanded for a *nunc pro tunc* competency hearing based on the initial evaluation and report by Dr. D'Errico. *Trueblood v. State*, 193 So. 3d 1060 (Fla. 1st DCA 2016). The First DCA court explained that Trueblood had been granted an initial competency evaluation and that Dr. D'Errico recommended he be found

competent, but no hearing had been held.  *Id.* at 1061.  The appellate court then referred to Trueblood's motion for a second competency evaluation (ECF No. 11-1 at 146–52), in which Trueblood's counsel recognized that Dr. D'Errico had determined Trueblood to be competent, but counsel was concerned because Trueblood rejected a favorable plea deal resolving the VOP cases as well as all the new criminal cases (*id.*; *see also id*. at 251–52).  The First DCA affirmed the new burglary convictions and sentences, but remanded for a *nunc pro tunc* competency hearing in regard to the first competency evaluation.  In so doing, the appellate court distinguished between the first motion and the second motion (at issue in this case), stating: "For clarity, the hearing on the second motion for competency evaluation was to determine whether or not there were reasonable grounds to believe that Trueblood may be incompetent in order to justify an examination—now a second examination.  The court did not find such grounds."  *Trueblood*, 193 So. 3d at 1062. In this habeas proceeding, Trueblood argues that the trial court committed fundamental error in regard to his VOP cases by denying a *second* evaluation (ECF No. 1 at 7; No. 2 at 4).  That claim forms the basis for the following discussion.

The substantive question of incompetence to stand trial is a separate question from the procedural question of whether the trial court erred by not holding a competency hearing.  As to the procedural question, the Supreme Court in *Pate*

"established 'a rebuttable presumption of incompetency upon a showing by a habeas petitioner that the state trial court failed to hold a competency hearing . . . despite information raising a bona fide doubt as to the petitioner's competency,' but the petitioner bears the burden of showing that 'objective facts known to the trial court were sufficient to raise a bona fide doubt.' " *Medina*, 59 F.3d at 1106 (citations omitted) (quoting *Reese v. Wainwright,* 600 F.2d 1085, 1091 (5th Cir. 1979). A *Pate* analysis of procedural error in failing to hold a competency hearing must focus on the trial court's actions or inaction in light of what it then knew and whether objective facts known to the trial court were sufficient to raise a bona fide doubt as to the defendant's competency. *Fallada*, 819 F.2d at 1568. "A *Pate* claim 'can and must be raised on direct appeal' because an appellate court hearing the claim 'may consider only the information before the trial court before and during trial.' " *Medina*, 59 F.3d at 1106 (quoting *James,* 957 F.2d at 1572).

To prevail on a *Pate* claim, "a petitioner must establish that the state trial judge ignored facts raising a 'bona fide doubt' regarding the petitioner's competency to stand trial." *James*, 957 F.2d at 1572 n.15 (citing *Fallada*, 819 F.2d at 1568). However, the standard of proof is high, and "the facts must positively, unequivocally, and clearly generate the legitimate doubt." *Card v. Singletary*, 981 F.2d 481, 484 (11th Cir. 1992) (quotations omitted). Relevant information may

include evidence of a defendant's irrational behavior, demeanor at trial, or prior medical opinion. *See Watts v. Singletary*, 87 F.3d 1282, 1287 (11th Cir. 1996).

In a substantive claim of incompetence to stand trial, the test for competency is "whether a defendant has, at the time of trial, 'sufficient . . . ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Raheem v. GDCP Warden*, 995 F.3d 895, 929 (11th Cir. 2021) (quoting *Dusky*, 362 U.S. at 402).

At the postconviction evidentiary hearing, Ms. Dias, Trueblood's counsel for his VOP cases, testified that she sought a second competency hearing primarily for mitigation purposes and because he rejected the plea offer for a term of years.[10] Counsel advised that when she began representing Trueblood, she knew he had been evaluated for competency and that the report indicated he was competent (ECF No. 11-10 at 354–62). She said she had no information that suggested he had any mental health issues. Additionally, the prosecutor in the VOP cases testified that he never worried about Trueblood's competency because he was very sophisticated and never

---

[10] Prior to the VOP hearing, a hearing was held July 12, 2013, on Trueblood's motion for a second competency evaluation. Counsel told the court she sought the evaluation primarily for mitigation, stating "what I wanted was really a mitigation specialist" (ECF No. 11-1 at 246).

exhibited any behavior to suggest incompetency.  He testified he understood that Trueblood's trial counsel asked for a second evaluation primarily to use as mitigation and because she could not understand why Trueblood would reject a plea offer for a term of years when he was facing life sentences (*id*. at 344–46).

Trueblood testified at the evidentiary hearing.  He stated that after his first competency evaluation by Dr. D'Errico, he was never seen by another expert and that he told his attorney he was suffering from mental health issues related to stress due to the case (ECF No. 11-10 at 315, 318).  He thought if he had a second evaluation, he might have gotten "mental health probation" or been sent to Chattahoochee state hospital (*id*. at 319).  He said his counsel should have kept asking for a second evaluation because Trueblood believed that is what the Florida Rules of Criminal Procedure required (*id*. at 317).  He admitted he had never been diagnosed with a major mental illness and took no prescription medications for mental issues (*id*. at 315–16).  He testified he was never in special education classes, but dropped out of high school for getting in trouble (*id*. at 16).

Considering the state court record, Trueblood has not satisfied his burden of establishing that the state trial judge ignored facts that "positively, unequivocally, and clearly generate[d]" a "bona fide doubt" regarding his competency to stand trial."  *See James*, 957 F.2d at 1572 n.15 (citing *Fallada*, 819 F.2d at 1568).

Therefore, Trueblood has not demonstrated that the trial court violated his procedural due process rights by failing to order a second competency evaluation relating to the VOP charges.

To the extent Trueblood makes a substantive incompetence claim, he presented no evidence that he was tried on the probation violations without "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" or that he did not have a "rational as well as factual understanding of the proceedings against him." *Dusky,* 362 U.S. at 402. The Eleventh Circuit has explained that "neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial." *Medina*, 59 F.3d at 1107 (citation omitted). Even the fact that a defendant has a mental illness is not enough, standing alone, to find that he or she is incompetent to stand trial. A history of mental illness and emotional problems, even if shown, does not demonstrate incompetency without a specific showing of how these difficulties generated a substantial doubt as to the defendant's competency at the time in question. *See id.* at 1106; *Card*, 981 F.2d at 484. Similarly, even where a defendant is undergoing treatment with psychiatric drugs, that fact, while relevant, does not alone prove incompetence. *See Sheley v. Singletary*, 955 F.2d 1434, 1438–39 (11th Cir. 1992). "[N]ot every manifestation of mental illness demonstrates

incompetence to stand trial; rather, the evidence must indicate a *present* inability to assist counsel or understand the charges . . . ." *Battle v. United States*, 419 F.3d 1292, 1299 (11th Cir. 2005) (quoting *Medina*, 59 F.3d at 1107). "The point is that on this claim, the standard of proof is high and the facts must positively, unequivocally, and clearly generate the legitimate doubt about whether the petitioner was mentally competent when he was tried." *Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1259 (11th Cir. 2002) (internal quotations omitted).

Trueblood has not met that high standard. He has presented no evidence of his inability to understand the charges or assist his counsel at the VOP hearing. The record does not reveal any evidence suggesting that he was incompetent. He has cited no evidence of a history of mental problems. He appeared lucid and articulate in his interactions with the court in the various hearings and was clear and articulate in the letters he wrote to Investigator Goldwich offering his cooperation and providing information on other perpetrators in the hope it would result in a more lenient sentence. His counsel testified she had no indication that Trueblood was incompetent, but sought evaluation to discover information to be used in mitigation and because he rejected a favorable plea offer. The fact that Trueblood insisted on what turned out to be an unwise defense strategy in rejecting a plea offer is not evidence that he was incompetent and unable to rationally and factually understand

the proceedings and assist counsel. *See, e.g.*, *United States v. Hines*, 694 F.3d 112, 122 (D.C. Cir. 2012) ("Even if ill-advised, [the defendant's] proposed defense strategies did not create reasonable cause to believe him incompetent to stand trial."); *United States v. Alden*, 527 F.3d 653, 660 (7th Cir. 2008) (same); *Rios v. Jones*, No. 3:15cv576/LAC/CAS, 2017 WL 4212331, at *8 (N.D. Fla. Aug. 17, 2017), *report and recommendation adopted*, No. 3:15cv576/LAC/CAS, 2017 WL 4181351 (N.D. Fla. Sept. 21, 2017) ("The fact that a defendant, who has not otherwise indicated any basis to find incompetency, insists on following an unwise defense strategy is not evidence that the defendant is incompetent and unable to rationally and factually understand the proceedings and assist counsel."). Nothing has been presented to show that Trueblood was incompetent when tried on the VOP.

For these same reasons, as to his *Pate* claim that the court procedurally erred in failing to order a second evaluation, Trueblood did not show that the trial judge ignored evidence leading to a substantial, legitimate doubt of his competence such that a second competency evaluation and hearing should have been conducted. Trueblood has not identified any United States Supreme Court decision requiring two competency experts be appointed. In fact, the Supreme Court in *Drope* held a statute requiring only one expert evaluation was sufficient to protect a defendant's right not to be tried while incompetent. 420 U.S. at 173. Based on the testimony

presented at the evidentiary hearing and on the trial court record, the state court's denial of a second competency evaluation and hearing prior to the VOP hearings did not violate Trueblood's federal due process rights.

Trueblood argues in his memorandum of law that his right to due process was violated by the failure of the state circuit court to follow the Florida rules of criminal procedure and Florida statutes relating to issues of competency (ECF No. 2 at 6–18). He made a similar argument in postconviction proceedings in state court. However, that claim raises an issue solely of state law and is not cognizable in federal habeas. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Cabberiza*, 217 F.3d at 1333 (explaining that § 2254 was not enacted to enforce State-created rights). The fact that Trueblood refers to a "due process" violation in regard to the state provisions does not change the conclusion that his state law claim is not cognizable in federal habeas review. *See Branan*, 861 F.2d at 1508 (federal habeas review's limitation concerning state law questions "is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.' ") (quoting *Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976)). Nevertheless, it bears noting that failure to provide a second competency expert under Florida law has been found *not*

to be fundamental error or go to the foundation of the case. *D'Oleo-Valdez v. State*, 531 So. 2d 1347, 1348 (Fla. 1988).

For all these reasons, Trueblood has not demonstrated any constitutional error in regard to issues relating to his competency and is not entitled to habeas relief on Ground Two.

### C.   Ground Three: Trial counsel rendered ineffective assistance by failing to properly prepare or investigate, or move for a continuance, prior to the violation of probation hearing.

Trueblood argues in this ground that his counsel at the revocation of probation hearing rendered ineffective assistance because she was not properly prepared and did not seek a continuance in order to become prepared (ECF No. 1 at 8; ECF No. 2 at 18). He raised this issue in state court in his Rule 3.850 motion and was provided an evidentiary hearing.

### 1.   Exhaustion

The State correctly points out that although Trueblood raised this claim in his Rule 3.850 motion and obtained a ruling on the merits after his evidentiary hearing, he failed to appeal denial of the claim to the First DCA. Where, as here, a defendant appeals from an order denying post-conviction relief after an evidentiary hearing, he is required to file an initial brief. Fla. R. App. Proc. 9.141(b)(3)(C). Issues not raised and argued in the initial brief are abandoned. *See Atwater v. Crosby*, 451 F.3d 799,

809–10 (11th Cir. 2006) (citing *Shere v. State*, 742 So. 2d 215, 217 n.6 (Fla. 1999) (recognizing Florida's rule that an issue raised in an appellate brief which contains no argument is abandoned)); *see also Duest v. Dugger*, 555 So. 2d 849, 851 (Fla. 1990) (holding that issues raised on appeal from an order denying post-conviction relief were procedurally barred when petitioner received an evidentiary hearing and failed to fully brief and argue the points on appeal). Trueblood's failure to invoke one complete round of Florida's established appellate review process—by abandoning this ineffective assistance of trial counsel (IATC) claim on appeal—renders Ground Three of Trueblood's § 2254 petition unexhausted. Because any further attempt by Trueblood to exhaust this issue in state court would be futile, it is procedurally defaulted. Trueblood makes none of the requisite showings to excuse his procedural default. Trueblood's procedural default bars habeas review of the IATC claim raised in Ground Three.

Notwithstanding Trueblood's procedural default, and because there is a merits adjudication of Trueblood's claim by the state circuit court (albeit an adjudication that was not reviewed by the state appellate court due to Trueblood's procedural default), the court will review the state court's adjudication of Trueblood's ineffective assistant of counsel claim under § 2254(d). *See* 28 U.S.C. § 2254(b)(2)

(permitting a federal habeas court to deny a habeas petition notwithstanding the petitioner's failure to exhaust state court remedies).

### 2. Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To obtain relief under *Strickland*, the petitioner must show (1) deficient performance by counsel, and (2) the petitioner suffered prejudice as a result. *Id.* at 687–88. If the petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

The focus of inquiry under the performance prong of *Strickland* is whether counsel's assistance was "reasonable considering all the circumstances," and reasonableness is measured "under prevailing professional norms." *Strickland*, 466 U.S. at 688. "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the

time." *Strickland*, 466 U.S. at 689.  "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." *Michael v. Crosby*, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting *Chandler*, 218 F.3d at 1317).  Counsel's performance is deficient only if it is "outside the wide range of professional competence."  *Jones*, 436 F.3d at 1293 (citing *Strickland*, 466 U.S. at 690); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").

As to the prejudice prong of the *Strickland* standard, the petitioner's burden of demonstrating prejudice is high.  *See Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002).  To establish prejudice, the petitioner must show "that every fair-minded jurist would conclude 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Jones v. GDCP Warden*, 753 F.3d 1171, 1184 (11th Cir. 2014) (quoting *Strickland*, 466 U.S. at 694).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome," not that counsel's conduct more likely than not altered the outcome of the proceeding.  *Id.* (citation omitted).  The difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case, and the petitioner must show that the

likelihood of a different result is substantial, not just conceivable. *Richter*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1198 (11th Cir. 1999). "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations omitted).

### 3.    Federal Review of State Court Decision

Trueblood was provided a hearing on this claim in state court.  His counsel testified that she has been a criminal defense lawyer since 1999 (ECF No. 11-10 at 353).  She explained that, as to the new law violations alleged as a basis for the VOP charges, the evidence consisted of Trueblood's confessions and the GPS evidence putting him at or near residences that were the subject of burglaries, "[s]o, I don't know how much preparation I would have" (*id*. at 356).  She agreed that she felt she was able to adequately prepare for the hearing, given the compelling items of evidence against her client.  She testified that more time to prepare would not have assisted her.  *Id.*  She obtained one continuance from July until October because she needed to hire someone to help, especially with the files for so many cases (*id*. at 357).  She said there was not much she could do in light of the multiple confessions, including the letters implicating himself and others that Trueblood wrote to the police investigator (*id*. at 358).  She expressed concern that, in light of his confessions and statements in the letters, if more time had passed before the VOP hearing, there may have been even more confessions (*id*. at 365).  Trueblood testified at the evidentiary hearing that he understood his counsel was prepared to try the new burglary charges, but he thought she was unprepared to try the VOP charges, even

though evidence for the VOP violations was essentially the same as the evidence for

the new charges (*id*. at 323–24).

The postconviction court denied the IATC claim, stating:

> With respect to whether Ms. Dias was adequately prepared for the hearings, the record shows that she did, in fact, ask for a continuance and got a continuance for apparently about a three month period. She, by the defendant's own testimony, was prepared to try the cases. Trying the cases is a lot harder than trying the VOPs because you don't have to worry about picking a jury and you don't have to worry about convincing a jury, you just have to look at the evidence.

> The evidence here was overwhelming. The GPS themselves would put the defendant, if not in the zone, in the area, or in a house, certainly in the general area. And the fact that he wrote these letters talking about his role in these crimes, admitting that he was going to receive a benefit from some of these crimes, is sufficient by itself to justify finding that he violated his probation. So there's no basis for arguing that there's deficient behavior there or that there was prejudice to the defendant. I think that Ms. Dias was prepared. And even if she wasn't prepared, there was overwhelming evidence that it wouldn't have mattered had she prepared to the end of time, she wouldn't have been able to overcome that.

(ECF No. 11-10 at 373–74). Trueblood has not demonstrated that his counsel's

performance was outside the wide range of professional competence. He has not

shown that the adjudication by the state court was objectively unreasonable or

contrary to any federal law or that it was an unreasonable determination of the facts

in light of the record. Moreover, he failed to demonstrate a reasonable probability—

one sufficient to undermine confidence in the outcome—that, with additional

preparation by his counsel, the outcome of the VOP hearing would have been different.  For these reasons, and regardless of failure to exhaust this claim in each appropriate state court, Trueblood is not entitled to habeas relief on this claim.

> **D.    Ground Four: Newly discovered evidence demonstrates that the trial court did not have sufficient evidence to find probation violations and that it violated the Fourteenth Amendment by entertaining a presumption of guilt during the violation of probation hearing when it relied on the violation of probation affidavit and an arrest probable cause affidavit.**

Trueblood argues in his petition and memorandum of law that the State did not prove by a preponderance of evidence the new law violations supporting the allegation of violation of Condition 5 of his probation.  He argues that newly discovered evidence that the state dropped all but two of the new burglary charges after his VOP hearing shows that the circuit court lacked sufficient evidence to find the violations of probation.  He also contends, but does not explain how, the state court relied on the VOP and probable cause affidavits to entertain a presumption of guilt, thus violating his Fourteenth Amendment rights.

### 1.    Exhaustion

Trueblood argues that because most of the new criminal charges were dropped after his violation of probation hearing—a circumstance he refers to as "newly discovered evidence"—the court lacked sufficient evidence to convict him of the

VOP.  The State correctly notes that although this claim was raised in Trueblood's

Rule 3.850 motion, and was denied by the postconviction court (ECF No. 11-10 at

374), it was not appealed to the First DCA.  Thus, as explained above, the claim is

unexhausted, and Trueblood has made none of the requisite showings to excuse his

procedural default.  Regardless of Trueblood's procedural default, he  is not entitled

to federal habeas relief on Ground Four.

## 2.    Clearly Established Federal Law

As an issue of federal law, a challenge to the sufficiency of the evidence to

support a conviction derives from the Fourteenth Amendment due process

requirement that the evidence presented be sufficient to convict.  When reviewing a

federal habeas claim of insufficient evidence to support a revocation of probation,

the appropriate standard is set forth in *Douglas v. Buder*, 412 U.S. 430 (1973).  That

standard is whether "the finding that [the defendant] had violated the conditions of

his probation . . . was so totally devoid of evidentiary support as to be invalid under

the Due Process Clause of the Fourteenth Amendment."  *See Newmones v. Sec'y,*

*Fla. Dep't of Corr.*, 546 F. App'x 812, 816 (11th Cir. 2013) (unpublished) (quoting

*Douglas*, 412 U.S. at 432).

In challenging sufficiency of the evidence supporting a revocation of

probation proceeding, as opposed to a conviction, the federal court will apply the

preponderance-of-the-evidence standard used by Florida in the probation revocation context. *See Barnes v. Fla. Dep't of Corr.*, 481 F. App'x 459, 461 (11th Cir. 2012) (unpublished) (citing *Mata v. State,* 31 So. 3d 257, 259 (Fla. 4th DCA 2010) ("To sustain a violation of probation, the State must prove, by a preponderance of the evidence, that the defendant willfully and substantially violated the terms of his probation.")).

Probation may be revoked based upon a new violation of the law even when the defendant has not been indicted or convicted of the new charge. *See, e.g., United States v. Jolibois,* 294 F.3d 1110, 1114 (9th Cir. 2002) (upholding a revocation of supervised release based upon actual conduct where the defendant was not prosecuted for that conduct); *United States v. Teran,* 98 F.3d 831, 836 (5th Cir. 1996) (explaining that subsequent acquittal of new law violation is not pertinent to whether court had preponderance of evidence to find a violation of probation); *Taylor v. U.S. Parole Comm'n,* 734 F.2d 1152, 1155 (6th Cir. 1984) (parole violation can be based on criminal conduct even if the charges were dismissed prior to trial); *Maselli v. State,* 446 So. 2d 1079, 1080 (Fla. 1984) (Mem.) ("[T]he judge may revoke probation upon finding that such unlawful act was committed by the probationer; it is not necessary that there be a conviction of the unlawful act."); *State v. Jenkins,* 762 So. 2d 535, 536 (Fla. 4th DCA 2000) (holding that the affidavit of probation

violation did not have to be dismissed on the ground that the state had *nolle prossed* the charge of criminal conduct that was the basis for the violation of probation, as *nolle prosequi* only meant the State did not have sufficient evidence to meet its burden of proving guilt beyond a reasonable doubt, a higher standard than was required to prove the probation violation); *Morris v. State,* 727 So. 2d 975, 977 (Fla. 5th DCA 1999) ("An acquittal in a criminal case does not preclude the judge from determining that a parole or probation violation has occurred based on the same conduct."); *State v. Green,* 667 So. 2d 959, 961 (Fla. 2d DCA 1996) ("It has long been the law that a new criminal charge can result in a violation of probation even if the defendant is acquitted of the new offense.").

As to a claim of actual innocence based on newly discovered evidence, that claim is not cognizable in federal habeas. The function of federal habeas corpus is to redress constitutional errors, not to relitigate state trials. *See Herrera v. Collins*, 506 U.S. 390, 401 (1993). Consequently, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Id.* at 400; *see also Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1356 (11th Cir. 2007) (stating that "our precedent forbids granting habeas relief based upon a claim of actual innocence, anyway, at least in non-capital cases");

*Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002) (citing *Herrera*, 506 U.S. at 400) ("It is not our role to make an independent determination of a petitioner's guilt or innocence based on evidence that has emerged since the trial.").

### 3.    Federal Review of State Court Decision

Prior to the postconviction evidentiary hearing, the circuit court issued an order to show cause relating to the need for an evidentiary hearing on all claims in the Rule 3.850 motion *except this claim* (ECF No. 11-10 at 57–58).    At the evidentiary hearing, the judge explained that he did not require a hearing on this claim because it was a frivolous argument and because the prosecutor's subsequent dropping of new cases was not newly discovered evidence (*id*. at 329–30).  The court stated, "That's just the State's decision not to pursue charges once they've got a sentence that satisfies them.  The State has the ability to not pursue charges when they're satisfied that justice has been done." (*id.*).

Even though the court did not order Ground Four to be heard at the evidentiary hearing, the prosecutor was asked at the hearing about the decision to drop the majority of the new cases.  He testified that he made the decision to drop all but two of the new burglary cases because it would be "fruitless" to try all of them when Trueblood had a life sentence on his earlier convictions pursuant to his violation of probation (ECF No. 11-10 at 347–48).  He agreed his main reason for not proceeding

on all the new cases was that of judicial economy.  He also testified that he decided

not to pursue all the new cases, in part, because of concern for how to deal with

Trueblood's criminal history and his GPS monitor (*id*. at 350).  At the conclusion of

the hearing, the postconviction court denied the claim, stating:

> Ground Four, I've already dealt with that. That's a frivolous
> claim that the fact that the State Attorney's Office decided, based on
> economy not to pursue further prosecution after they've obtained a life
> sentence against the defendant is not a basis for overturning the
> violation of probations.  So I'm going to deny that based on those facts.

(ECF No. 11-10 at 374).

Regardless of Trueblood's failure to exhaust this claim by appealing its denial

to the state appellate court, the lower state court's adjudication of the merits of the

claim was not contrary to or an unreasonable application of clearly established

federal law.  Revocation of probation is based on a preponderance of the evidence,

which was presented in this case.

As discussed earlier, burglary victims testified at the revocation hearing that

their residences had been burglarized and an item or items taken without their

permission.  Trueblood's probation officer testified that she provided detectives with

Trueblood's locations at the times of those burglaries, as recorded by the GPS

monitoring system required by the conditions of his probation.   Documents

indicating his GPS locations, accurate within eighteen feet of the locations, on the

dates and times of the incidents were admitted and showed that Trueblood was at or very near the residences that were the subject of burglaries. Evidence was presented that Trueblood was stopped not far from one of the new burglaries just after it was reported, and items taken in that burglary were found in his possession. And the Tallahassee Police Investigator testified to five specific burglaries that Trueblood confessed to in his interviews. A Leon County Sheriff's Detective also testified that Trueblood confessed to nine different burglaries. A chart of fifty burglaries in 2012 and 2013, listing case number, address, date, time of offense, victim, and Trueblood's GPS locations was admitted into evidence. Additionally, as to violation of Condition 6 of his probation, evidence was presented that Trueblood confessed to committing burglaries with other persons.

It cannot be said that the finding that Trueblood violated the conditions of his probation in the thirty-seven earlier cases "was so totally devoid of evidentiary support as to be invalid under the Due Process Clause of the Fourteenth Amendment." *See Newmones*, 546 F. App'x at 816 (unpublished). Further, the fact that the prosecutor later elected to drop charges in the majority of the new law violations, as the state court found, is not newly discovered evidence and does not provide grounds on which to overturn the revocation and sentences. Neither a trial

nor a conviction on the new law violations is required to uphold revocation of probation based on criminal conduct while on probation.

To the extent that Trueblood is attempting to raise a freestanding actual innocence claim based on alleged newly discovered evidence, that claim is not cognizable in federal habeas review. *Herrera*, 506 U.S. at 390. Although a prisoner may assert actual innocence to overcome a procedural bar that would otherwise prevent a federal court from hearing his claim on the merits, *see Sawyer v. Whitley*, 505 U.S. 333, 338–39 (1992); *Herrera*, 506 U.S. at 404, Trueblood does not raise his "newly discovered evidence" claim in order to overcome a procedural bar, but instead raises it as grounds to invalidate his revocation of probation and resulting sentences. For all the foregoing reasons, Trueblood is not entitled to habeas relief on this claim.

### E.    Ground Five: Cumulative Error

Trueblood contends that instances of ineffective assistance of counsel, when viewed cumulatively, violated his constitutional right to competent counsel and a fair trial (ECF No. 1 at 12). He raised a cumulative error claim in his motion for postconviction relief, which was denied (ECF No. 11-10 at 374). The State responds that the issue was not exhausted in state court because Trueblood failed to appeal the denial of his postconviction cumulative error claim to the state appellate court (ECF

No. 11 at 51).  Regardless of failure to exhaust as required by § 2254(b)(1)(A), the claim may be denied.  *See* 28 U.S.C. § 2254(b)(2).

In rejecting a "cumulative error" argument made by a § 2254 habeas petitioner, the Eleventh Circuit explained: "The Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim." *Forrest v. Fla. Dep't of Corr.*, 342 F. App'x 560, 564 (11th Cir. 2009) (per curiam) (unpublished).  The *Forrest* panel further noted, "However, the Supreme Court has held, in the context of an ineffective assistance claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.' " *Id.* at 564–65 (quoting *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984)).

Considering *Cronic* and the absence of Supreme Court precedent applying the "cumulative error" doctrine to claims of ineffective assistance of counsel, the state court's rejection of Trueblood's claim was not contrary to or an unreasonable application of clearly established federal law.  *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established federal law.") (internal quotations and

citations omitted); *see also Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1288 (11th Cir. 2012) ("The Supreme Court has reiterated, time and again, that, in the absence of a clear answer—that is, a holding by the Supreme Court—about an issue of federal law, we cannot say that a decision of a state court about that unsettled issue was an unreasonable application of clearly established federal law."); *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 n.3 (11th Cir. 2012) (refusing to decide whether, under the current state of Supreme Court precedent, cumulative error claims reviewed through the lens of AEDPA can ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law).

Further, even if cognizable on federal habeas review, where there is no error, the "cumulative error" claim has no merit. *See Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1284 (11th Cir. 2014). Trueblood has not demonstrated any constitutional error and is not entitled to habeas relief on his "cumulative error" claim.

> **F.    Ground Six: The trial judge at the violation of probation hearing was not impartial and Trueblood's due process rights were violated because the judge was subsequently involuntarily retired after she was charged with violations of the Canons of Judicial Conduct by the Judicial Qualifications Commission.**

Trueblood argues that he was deprived of due process at the VOP hearing because the judge was later charged with violating Canons of Judicial Conduct in unrelated matters that occurred during the years 2012 and 2013. The charges of violation of the canons were filed in 2015 in the Florida Supreme Court, and the judge stipulated to involuntary retirement in Case No. SC15-786. The Florida Supreme Court adopted the stipulation and entered an order in September 2015 declaring the judge involuntarily retired due to "permanent disability that seriously interferes with the performance of her judicial duties." *See In re Fulford*, 177 So. 3d 1267 (Fla. 2015) (SC15-786) (unpublished order). The State correctly contends the claim is unexhausted and thus procedurally barred in federal review because it was not raised in Trueblood's 2017 Rule 3.850 motion and was neither heard nor ruled on by the state courts in any proceeding.

Trueblood argues that the claim was exhausted in state court in his Petition for Writ of Habeas Corpus (ECF No. 11-18) filed in the Florida Supreme Court in 2020 in case number SC20-1242 (ECF No. 2 at 20). However, the Florida Supreme Court found that petition was unauthorized and dismissed it without a ruling on the merits, citing *Baker v. State*, 878 So. 2d 1236 (Fla. 2004) (ECF No. 11-19). For the reasons discussed *supra* in Ground Two, the state court's application of its *Baker* procedural bar was in accordance with firmly established and regularly followed

state procedural principles.  Therefore, this federal court must honor the procedural ruling.  Neither the "cause and prejudice" nor the "miscarriage of justice" exception saves Trueblood's  procedurally defaulted claim.  Claim Six is barred from federal review.

> **G.    Ground Seven: The court committed fundamental error when it denied a second competency evaluation as required by section 916.12(2), Florida Statutes.**

This claim is the same claim presented in Ground Two, *supra*, after Trueblood's clarification in his reply.  Discussion of it need not and will not be repeated.  As explained above in Ground Two, the claim should be denied.

## V.    CONCLUSION

Trueblood has failed to satisfy § 2254(d) with respect to any claim.  Therefore, Trueblood's § 2254 petition should be denied.

## VI.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice

of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.' " *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting § 2253(c)(2)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.' " *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (citing *Miller-El*, 537 U.S. at 327). Trueblood cannot make that showing with respect to any of his claims. Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

Case No. 4:20cv560/MW/EMT

2.      That a certificate of appealability be **DENIED**.

3.      That the clerk of court be directed to enter judgment accordingly and

close this case.

At Pensacola, Florida, this <u>25</u><sup>th</sup>  day of August, 2021.


/s/  *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**




## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**